UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00332-RSE

**CHRISTOPHER H.**                                                                          **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY,**                                                                        **DEFENDANT**
*Commissioner of Social Security*[1]

### MEMORANDUM OPINION AND ORDER

  The Commissioner of Social Security denied Christopher H.'s[2] ("Claimant's") application for disability insurance benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 14; DN 15). The Commissioner has responded in a Fact and Law Summary. (DN 18). The time for Claimant to reply has expired. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

### I. Background

  Claimant first applied for disability insurance benefits ("DIB") under Title II on October 23, 2017, alleging disability beginning August 1, 2017. (Transcript, hereinafter "Tr.," 129). His application was denied at both the initial and reconsideration stages. (*Id.*). Claimant requested a hearing. Administrative Law Judge Jerry Lovitt ("ALJ Lovitt") held such a hearing on July 3,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.
[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced by first name and last initial in opinions issued.

2018. (*Id.*). ALJ Lovitt issued an unfavorable decision on October 2, 2018, concluding Claimant had not been under a disability, as defined in the Social Security Act, from August 1, 2017 through the date of the decision. (Tr. 143). The Appeals Council affirmed ALJ Lovitt's decision. (Tr. 150). Claimant did not seek judicial review of the Commissioner's denial.

Claimant filed a second application for DIB under Title II, alleging disability beginning on October 3, 2018. (Tr. 159). His application was again denied at both the initial and reconsideration levels. (*Id.*). At Claimant's request, Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") held a hearing on March 10, 2020. (*Id.*). ALJ Pickett issued an unfavorable decision on March 23, 2020, determining that Claimant had not been under a disability from October 3, 2018 through the date of the decision. (Tr. 167). The Appeals Council affirmed ALJ Pickett's decision (Tr. 170), and Claimant once again did not seek judicial review of the Commissioner's denial.

Claimant filed a third application for DIB under Title II on July 21, 2021, alleging disability beginning on March 24, 2020. (Tr. 405-06). In his application, Claimant alleged disability due to PTSD, sleep disorder, anxiety, depression, insomnia, anger issues, degenerative disc disease, migraines, IBS-D, overactive bladder, flat feet, and a bulging disc. (Tr. 451). Claimant's application was denied initially and again on reconsideration. (Tr. 181-89, 191-99). Administrative Law Judge Neil Morholt ("ALJ Morholt") conducted a hearing on May 24, 2022. (Tr. 92).

During this hearing, Claimant testified to the following. He lives with his wife and daughter (Tr. 98). He spent many years working in the military, including being deployed in Iraq in 2003, 2004, 2006, and 2007 and in Kosovo in 1999, working as a tank commander from 2007-2013, and training soldiers in tank operation and maneuvering until 2017 when he was discharged. (Tr. 98-100). His back issues limit his ability to help with household chores. (Tr. 105). He suffers from migraine headaches typically three to four times a week, which last a couple of hours. (Tr. 107).

He takes preventative medication daily and additional medication when he feels a headache starting. (Tr. 107-08). When he has a migraine, Claimant gets "big spots in his eyes" that make him nauseated. (Tr. 112). He then lays down with a cold rag over his head in a dark and quiet room. (*Id.*). High social anxiety affects his ability to be in public and around other people. (Tr. 110). He has not had alcohol in over a year and states his mood is better without it. (Tr. 111-12). His depression is "probably about the same" and he has continued speaking with a therapist. (Tr. 113-14).

ALJ Morholt issued an unfavorable decision on June 16, 2022, finding that Claimant had not been under a disability from March 24, 2020 through the date of his decision. (Tr. 219). Claimant administratively appealed ALJ Morholt's denial. On July 27, 2022, the Appeals Council vacated ALJ's Morholt's decision and remanded the case for further consideration. (Tr. 227-34). The Appeals Council ordered the ALJ on remand to evaluate the nonmedical source statements in the record pursuant to SSR 16-3p(2)(c), to further consider the RFC, including evaluation of the medical opinion evidence pursuant to 20 C.F.R. § 404.1520c; and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on claimant's occupational base. (Tr. 229-32).

Claimant appeared before ALJ Morholt at a second hearing in Louisville, Kentucky on December 29, 2022. (Tr. 44-91). Claimant attended the hearing by telephone with his attorney.[3] (Tr. 44). An impartial vocational expert also attended the hearing. (*Id.*). During this hearing, Claimant testified that the primary impairments affecting him were bathroom issues, post-traumatic stress disorder, and back pain. (Tr. 52-54). He stated that he continues to meet with his therapist every two weeks and takes medications, but his mental health issues have "remained the

---

[3] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 286).

same" over the past two-and-a-half years. (Tr. 60). He testified to still having "outbursts" around people and that he cannot be around "noise and the crowds." (*Id.*).

ALJ Morholt issued an unfavorable decision on March 20, 2023. (Tr. 15-36). He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant did not engage in substantial gainful activity from March 24, 2020 through his date last insured of December 31, 2022. (Tr. 20). Second, through the date last insured, Claimant had the following severe impairments: obesity, degenerative disc disease of the lumbar spine status post-surgery, right hip trochanteric bursitis/degenerative joint disease, left elbow release/fasciotomy, irritable bowel syndrome, sleep apnea, headaches, liver disease, anxiety, and post-traumatic stress disorder. (Tr. 21). Third, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). At Step Four, ALJ Morholt found Claimant had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [C]laimant could occasionally climb ramps and stairs, stoop, balance, kneel, and crouch. The claimant could never crawl or climb ladders, ropes, or scaffolds. The claimant needed to avoid all exposure to unprotected heights. The claimant could have no more than frequent exposure to vibration and workplace hazards such as machinery with moving parts that fail to stop when human contact is lost. The claimant could occasionally reach overhead bilaterally, and frequently reach at or below shoulder level height bilaterally. The claimant could understand, remember, and carry out simple routine tasks and instructions in a routine work setting having minimal variations and little independent judgment for extended 2 hour periods before the need for a regularly scheduled break. The work could not be fast-paced production line, assembly line, or quota driven work. The claimant could not perform tandem tasks. The claimant could have occasional contact with supervisors and coworkers and no contact with the general public. The claimant could be exposed to no more than moderate levels of noise as defined in Appendix D of the SCO. The claimant needed to work in an environment that was in close proximity to an accessible bathroom (for example, the incumbent worker must not have to traverse a large distance in order to reach a bathroom, as might be the case with outdoor work such as a park ranger, a groundskeeper, or a utility powerline worker).

4

> The claimant needed to be allowed to alternate into the sitting position from the standing/walking positions every hour for 2-3 minutes at a time while remaining at the workstation, as well as being allowed to alternate to the standing position from the sitting position every hour for 2-3 minutes while at the workstation.

(Tr. 24-25). Additionally at Step Four, ALJ Morholt found Claimant was unable to perform any of his past relevant work. (Tr. 34). Fifth and finally, considering Claimant's age, education, work experience, and RFC, ALJ Morholt found there were jobs that existed in significant numbers in the national economy that Claimant could have performed. (Tr. 35). ALJ Morholt concluded Claimant was not under a disability, as defined in the Social Security Act, at any time from March 24, 2020, the alleged onset date, through December 31, 2022, the date last insured. (Tr. 36).

Claimant administratively appealed ALJ Morholt's second decision. (Tr. 388-90). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Morholt's decision. (Tr. 1-7). At that point, ALJ Morholt's denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

5

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant submits two claims of error from ALJ Morholt's decision. First, Claimant asserts ALJ Morholt erred in failing to evaluate whether Claimant's headaches medically equaled Listing 11.02B. Second, Claimant argues that ALJ Morholt erred by improperly applying AR 98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997) to his mental RFC determination.

#### A. ALJ Morholt's Evaluation of Claimant's Migraine Headaches at Step Three

At Step Three of the sequential evaluation process, the ALJ must evaluate whether the claimant has "an impairment(s) that meets or equals one of [the] listings in appendix 1" and "meets the duration requirement[.]" 20 C.F.R. § 4040.1520(a)(4)(iii). Claimant carries the burden of proving his impairment meets "all of the specified medical criteria" for a listing or medically

equals "all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In his Step-Three analysis, ALJ Morholt recognized that headaches are not a listed impairment from Appendix 1 but explained that headaches are most analogous to Listing 11.02 (epilepsy), specifically paragraphs B and D. (Tr. 23 (citing SSR 19-4p)). In evaluating Claimant's headaches under Listing 11.02B and D, ALJ Morholt found there was "no evidence for marked limitations in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself." (*Id.*).

Claimant argues that ALJ Morholt erred by evaluating Listings 11.02B and D together because 11.02B does not require the claimant to establish marked limitations. (DN 15, at PageID # 1405). Because ALJ Morholt only discussed the marked-limitation standard, Claimant argues he failed to address Listing 11.02B and, consequently, violated SSR 19-4p. (*Id.* at PageID # 1406). Claimant asserts the ALJ's error is not harmless because sufficient evidence in the record establishes medical equivalence of all criteria in Listing 11.02B. (*Id.*).

The Commissioner argues that ALJ Morholt's statement that he considered whether Claimant's impairment equaled Listing 11.02 was sufficient based on SSR 17-2p. (DN 18, at PageID # 1431). That Ruling, the Commissioner explains, provides that an adjudicator is not required to articulate specific evidence supporting his finding that a claimant's impairments do not medically equal a listing where the adjudicator at the hearings or AC level believed the evidence already received did not reasonably support such a finding. (*Id.* (citing SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017)). The Commissioner further argues that the remainder of ALJ Morholt's decision provided additional support for his brief step-three determination, including

7

considering objective evidence of Claimant's headaches in the RFC, finding Certified Nurse Practitioner ("NP-C") Clint Cron's ("NP-C Cron's") opinion concerning Claimant's migraine headaches to be unpersuasive, and finding Claimant's hearing testimony regarding headaches was not entirely consistent with the medical evidence of record. (*Id.* at PageID # 1431-32). As for Claimant's allegations that he medically equals each criterion of Listing 11.02B, the Commissioner maintains that Claimant's subjective complaints, without citation to any medical or authority, do not suffice. (*Id.* at PageID # 1432-33).

SSR 19-4p provides guidance on how headache disorders should be evaluated at step three. SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Under this Ruling, an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id.* at *7. The Ruling identifies that the "most closely analogous listed impairment" for a medically determinable impairment of primary headache disorder is Listing 11.02 – Epilepsy. *Id.* Listing 11.02B, at issue here, requires proof of "dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)[.]" 20 C.F.R. Pt. 404, Subpt P, App'x 1, § 11.02B. Dyscognitive seizures are defined as "alteration of consciousness without convulsions or loss of muscle control" that may include "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances)[.]" *Id.* at § 11.00H(1)(b).

SSR 19-4p explains that in evaluating whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the ALJ must consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example,

8

> many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.*

ALJ Morholt identified Listing 11.02B in his Step-Three analysis. (Tr. 23). The Commissioner argues, pursuant to SSR 17-2p, that ALJ Morholt's statement that he considered whether Claimant's impairments met or medically equaled Listing 11.02 was sufficient. Under SSR 17-2p, an adjudicator "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4 (Mar. 27, 2017). While ALJ Morholt was not required to articulate specific evidence to support his finding, Claimant is correct that ALJ Morholt's analysis of Listing 11.02B did not identify the appropriate criteria to be considered. He referenced only that Claimant had no marked limitations in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself. (Tr. 23). Listing 11.02B does not require proof of marked limitations. Even so, any error arising from ALJ Morholt's analysis of Listing 11.02B is harmless.

Claimant fails to establish that he medically equals each criterion from Listing 11.02B. Claimant cites to treatment records from NP-C Cron to establish the duration and "adherence to prescribed treatment" requirements of the Listing. (DN 15, at PageID # 1407-08 (citing Tr. 746, 749, 752, 755, 758, 761, 764, 767, 770, 772, 865, 868, 871, 874, 877, 880, 883, 886, 889, 892, 895, 897)). These records detail Claimant's monthly visits with NP-C Cron from January 2021 to January 2022. The purpose for nearly all of these visits was to address Claimant's abnormal weight gain. The records noted Claimant had no other "acute" issues. As far as Claimant's headaches, the

9

records only mention that Claimant reported "occasional headaches" and that "migraines" are an "ongoing medical problem." But these records do not identify with any specificity how often his headaches were occurring and do not establish that Claimant meets the duration requirement of three to four headaches weekly for at least three consecutive months.

Even if these vague references to Claimant's headaches raised a sufficient question as to whether Claimant can meet the duration requirement of Listing 11.02B, Claimant additionally fails to establish the "alteration of consciousness" prong. Claimant relies mainly on his own hearing testimony and a "headache questionnaire" he completed on August 20, 2021 to claim he satisfies this requirement. (DN 15, at PageID # 1406-07 (citing Tr. 107, 479-480)). Claimant highlights his statements that his migraines force him to stay in bed with a cold rag over his eyes, with pain on both sides of his head and radiating down the back of his head, and with symptoms of light and noise sensitivity, blurred vision, nausea, and vomiting. (*Id.*). This testimony, Claimant advocates, medically equals an "alteration of consciousness." (*Id.*). And according to Claimant, laying down with a cold rag over his eyes for several consecutive hours is equivalent to "blank staring" as mentioned in Listing 11.02B. (*Id.* at PageID # 1407). Claimant submits his testimony is corroborated by NP-C Cron's medical opinion, which noted the duration of Claimant's headaches was four to six hours and their severity would preclude performance of even basic work activities. (*Id.*).

ALJ Morholt discussed and discounted the evidence Claimant relies on later in his RFC determination. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding that ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three") (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and

finding no need to require the ALJ to "spell out every fact a second time")). ALJ Morholt noted Claimant's May 2022 hearing testimony that he experiences migraine headaches three to four times a week that last a couple of hours each time and that Claimant generally gets in bed when those occur. (Tr. 27). He determined, however, that Claimant's subjective statements were not entirely consistent with the medical evidence. Because there was limited objective evidence regarding Claimant's history of headache pain other than Claimant continuing to receive treatment for this condition, ALJ Morholt determined there had been no material change in the type of treatment or complaints as occurred during the prior adjudicated period. (Tr. 30).

Additionally, ALJ Morholt analyzed and ultimately found NP-C Cron's opinion was unpersuasive. (Tr. 32-33). He reasoned that NP-C Cron's opinion was inconsistent with a record documenting "very little" evidence concerning headaches, with no "ongoing or extensive treatment for migraine headaches" and "conservative treatment." (*Id.*). Critically, Claimant's current appeal does not challenge either ALJ Morholt's evaluation of his subjective complaints or evaluation of NP-C Cron's opinion within the RFC. Because Claimant only relies on evidence that was appropriately discounted by ALJ Morholt and Claimant does not challenge the ALJ's analysis in that respect, his argument that such evidence equals an "alteration of consciousness" under Listing 11.02B fails.[4]

For these reasons, the Court finds no reversible error in ALJ Morholt's evaluation of Listing 11.02B at Step Three. His analysis elsewhere in his decision demonstrates that substantial evidence supports his conclusion that Claimant's headaches do not medically equal a listed impairment.

---

[4] Claimant had the opportunity to file a reply brief to rebut the Commissioner's arguments relating to ALJ Morholt's evaluation of Claimant's headaches in the RFC but declined to do so.

11

B. ALJ Morholt's Application of *Drummond* and its Progeny

Claimant next argues that ALJ Morholt's decision does not comply with the *res judicata* requirements of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997), specifically regarding his evaluation of Claimant's mental functioning. (DN 15, at PageID # 1411-12). Claimant submits that ALJ Morholt's analysis is contradictory, by first stating that Claimant's mental functioning is stable but then noting changes to the mental RFC, including the elimination of any "off task" restriction. (*Id.*). According to Claimant, ALJ Morholt should have adopted the entirety of the mental RFC from the 2018 and 2020 decisions. (*Id.* at PageID # 1412). ALJ Morholt's summary of the evidence, Claimant argues, actually shows a worsening of Claimant's mental health conditions and, at a minimum, supports adoption of the prior decisions. (*Id.* at PageID # 1414-15). Claimant concludes this error was prejudicial because if ALJ Morholt had included the prior decisions' limitation "to no more than 10%-time off task," he would have been found disabled. (*Id.* at PageID # 1415).

The Commissioner responds that ALJ Morholt took a fresh look at the record, as required by *Drummond, Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), and Acquiescence Ruling 98-4(6) and properly found a slight change from the prior mental RFC finding was warranted. (DN 18, at PageID # 1433-34). The Commissioner explains that ALJ Morholt recognized the prior decisions' "off task" restrictions but reasoned such a limitation was not supported by the current record, which revealed no treatment beyond medication and outpatient therapy. (*Id.* at PageID # 1435). ALJ Morholt's decision to slightly alter Claimant's mental RFC was further supported by the State agency psychological consultants' findings, the Commissioner further explains.[5] (*Id.*). Because ALJ Morholt thoroughly considered the objective observations

---

[5] The Commissioner points out that Claimant "does not specifically challenge the ALJ's evaluation of, or reliance on, the assessments of Drs. Vandivier and Thompson[,]" the State agency psychologists. (DN 18, at PageID # 1436).

relating to Claimant's mental impairments during the relevant time period and properly relied on the State agency findings, the Commissioner reasons ALJ Morholt conducted the requisite "fresh review," and his determination was supported by substantial evidence. (*Id.* at PageID # 1436).

In *Drummond*, the Sixth Circuit determined that "where the Commissioner has made a final decision concerning a claimant's entitlement to benefits," he is bound by this determination under principles of *res judicata* absent changed circumstances. 126 F.3d 837, 842 (6th Cir. 1997). The Social Security Administration expounded on *Drummond's* holding in Acquiescence Ruling 98-4, clarifying that "changed circumstances" requires "new and material evidence" relating to the prior ALJ's finding or that "there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." SSAR 98-4(6), 1998 WL 274052, at *29773 (June 1, 1998). Recently, the Sixth Circuit revisited *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), finding that when an ALJ considers a subsequent disability claim for a new period of disability, he is permitted to review the prior ALJ's findings but is not bound by them. In considering a successive application covering a new period of disability, the ALJ should take a "fresh look" at the new record to determine if the claimant's condition has worsened or if new evidence changes the previous analysis. *Earley,* 893 F.3d. at 931.

Claimant filed two prior claims for benefits under Title II of the Social Security Act, which were denied by the ALJs and by the Appeals Council. (Tr. 126-79). Claimant's first claim for benefits was denied on October 2, 2018. (Tr. 135). In that decision, the ALJ assessed that Claimant had the residual functional capacity to perform light work with additional physical and mental restrictions. (Tr. 135). Relevant here is the prior ALJ's limitation that Claimant would "be[] off task for no more than 10% of the workday in addition to normally scheduled breaks, and missing no more than one day of work per month[.]" (Tr. 135). In denying Claimant's second claim for

13

benefits on March 23, 2020, the ALJ recognized that *res judicata* applied pursuant to *Drummond* and found no basis for making a different RFC finding. (Tr. 164). Consequently, the RFC in the second decision also included the restriction of Claimant being off task no more than 10% of the workday and missing no more than one day of work per month. (Tr. 163).

In the RFC analysis for the current decision, ALJ Morholt indicated that he must consider AR 98-4(6) and *Drummond* since another ALJ made a final decision on March 23, 2020 that contained an RFC assessment. (Tr. 25). ALJ Morholt noted that under AR 98-4 and *Drummond,* he could not deviate from the prior RFC "unless new and additional evidence or changed circumstances provide a basis for a different finding." (Tr. 26). Regarding Claimant's mental functioning, ALJ Morholt noted Claimant had "remained stable since the prior decisions, if not improved[.]" (Tr. 26). ALJ Morholt explained that his current mental functional capacity assessment incorporated these minor changes, by eliminating any "off task" or "absent from work" limitations." (*Id.*). These prior limitations, ALJ Morholt concluded, were not supported by the evidence of record. (*Id.*).

Later in his RFC analysis, ALJ Morholt thoroughly considered evidence of Claimant's mental impairments during the relevant period. He first discussed how Claimant had received outpatient and mental health treatment for anxiety and post-traumatic stress disorder. (Tr. 30). ALJ Morholt noted Claimant's report from August of 2021 that he was experiencing increased symptoms of depression, tearfulness, withdrawing from and avoidance of his spouse, loss of interest, and difficulty with focus but emphasized that on status exam Claimant was fully oriented, had appropriate behavior, depressed mood, a labile affect, excellent insight and judgment, intact memory, good attention and concentration, and normal speech. (*Id.*). ALJ Morholt then recounted that in September 2021, Claimant reported increased mental health symptoms, which he believed

was triggered by his irritable bowel syndrome, but he was advised to continue with outpatient treatment and was prescribed Celexa. (*Id.*).

ALJ Morholt next described the consultative psychological examination Claimant underwent in November of 2021, where he reported attending outpatient mental health treatment but having some increased depression with symptoms of poor sleep, low motivation, feelings of worthlessness, no interest, no energy, and isolation from others. (Tr. 30). ALJ Morholt further discussed how on mental status examination, Claimant was found to have: variable attention and concentration requiring redirection; good orientation; defective short-term memory but good immediate recall and memory of remote events; anxious mood and affect; normal speech, hypervigilant thought content, logical and goal directed organizations; adequate judgment, reality testing, insight, and decision-making capabilities. (*Id.*).

ALJ Morholt continued by noting Claimant's ongoing mental health treatment through both the VA and Astra Behavioral Health and how in March of 2022, he was found to be very attentive and participatory in group therapy. (Tr. 31). He stated that Claimant has "continued with conservative outpatient treatment and medication treatment" and a mental status examination from April 2022 was "essentially normal" with Claimant reporting he was doing good. (*Id.*). ALJ Morholt concluded that since the previous administrative hearing, Claimant has continued with stable mood and normal mental status examination findings and that his conservative treatment of therapy and medication was beneficial in controlling his mental health symptoms. (*Id.*).

At issue is whether ALJ Morholt appropriately deviated from the prior ALJ decisions by removing the limitation of Claimant being off task no more than 10% of the time and being absent from work no more than one time per month. Claimant argues that ALJ Morholt should have adopted the RFCs from the 2018 and 2020 opinions, essentially advocating for a rigid application

of *Drummond*. In so arguing, however, Claimant fails to recognize *Earley's* clarification that *Drummond* does not prevent the ALJ from giving a "fresh look" to a "new application containing new evidence . . . that covers a new period of disability while being mindful of past rulings and the record in prior proceedings." 839 F.3d at 931. Although ALJ Morholt didn't cite to *Earley*, by exhaustively reviewing the mental health evidence and recognizing the prior decisions, he conducted the "fresh look" contemplated in that case.

Claimant maintains that the mental health evidence ALJ Morholt summarized demonstrates a worsening of his conditions since the last decision was issued. Claimant argues the prior ALJ's decision noted unremarkable status findings, whereas the findings for his current claim "show abnormalities in mood, affect, concentration, memory, and thought content." (DN 15, at PageID # 1415 (citing Tr 30, 139, 165)). The Court disagrees. While Claimant is correct that the prior decisions from 2018 and 2020 stated that Claimant had normal mental status examinations (Tr. 139, 165), Claimant's reference to new records showing slight abnormalities in mood, affect, concentration, memory, and thought content does not paint an accurate picture of the evidence ALJ Morholt considered as a whole. Claimant fails to acknowledge the essentially normal mental exam findings in April 2022 and the overall conservative mental health treatment Claimant has received.

Claimant likewise fails to acknowledge that ALJ Morholt's mental RFC is supported by the State Agency psychologists' (Drs. Vandivier and Thompson) opinions. Drs. Vandivier and Thompson declined to add restrictions accounting for off-task time or absence from work after evaluating the record as a whole. ALJ Morholt found these opinions were persuasive. As the Commissioner again points out, Claimant does not challenge ALJ Morholt's evaluation of this opinion evidence. And Claimant does not attempt to compare these State agency opinions to those

16

from the prior decisions. One or two records detailing slightly abnormal mental findings on exam do not demonstrate that Claimant's conditions worsened since the last ALJ's decision.

At the end of the day, § 405(g) requires the Court to consider whether ALJ Morholt's mental RFC, which omitted prior restrictions as to being off task and absences, is supported by substantial evidence and complies with the applicable regulations. ALJ Morholt considered the prior decisions, discussed the current evidence in depth (including evidence of slight abnormalities from a mental status exam), and determined that because Claimant's mental impairments have remained overwhelmingly stable through three different decisions, minor change to the prior RFC was warranted. This determination is supported by substantial evidence in the record, and Claimant has not demonstrated ALJ Morholt's analysis violates *Drummond* and its progeny.

### IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:     Counsel